UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NOE RAMON LOPEZ, | ) 1:09-CV-01451 AWI JMD HC |
| | ) |
| Petitioner, | ) FINDINGS AND RECOMMENDATION |
| | ) REGARDING PETITION FOR WRIT OF |
| v. | ) HABEAS CORPUS |
| | ) |
| F. JACQUEZ, | ) |
| | ) |
| Respondent. | ) OBJECTIONS DUE WITHIN THIRTY (30) |
| | ) DAYS |

Noe Ramon Lopez (hereinafter "Petitioner") is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus.

**PROCEDURAL AND FACTUAL BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation pursuant to a 2007 jury verdict, finding Petitioner guilty of first degree murder (Cal. Penal Code § 187(a)) and of attempted murder (Cal. Penal Code §§ 664, 187(a)). (Answer at 1; Pet. at 2.) Petitioner was alleged to been a member of the West Fresno Norteños and to have fired several shots into a car where Angelo Gonzales, a member of a rival gang, and Farrah Brown were sitting. (Lod. Doc. 2 at 1; Answer at 2-10.) Both occupants in the car were struck, resulting in death to Mr. Gonzales and serious injury to Ms. Brown. The jury found true the special allegation that Petitioner had committed the murder for the benefit of, at the direction of, or in association with a criminal street gang (Cal. Penal Code § 186.22(b)(1)) and that Petitioner had personally discharged a

firearm causing death or serious injury (Cal. Penal Code § 12022.53(d)). (Answer at 1; Pet. at 3.) The trial court sentenced Petitioner to an indeterminate prison term of seventy-five year to life and a determinate term of seven years. (Answer at 1.)

Petitioner appealed his conviction to the California Court of Appeal, Fifth Appellate District, which issued a reasoned opinion on May 2, 2008, affirming Petitioner's conviction. (Lod. Doc. 2.)

Petitioner filed a petition for review with the California Supreme Court, which denied the petition on July 23, 2008. (Lod. Docs. 25, 26.)

On August 4, 2009, Petitioner filed the instant federal petition for writ of habeas corpus in the Central District of California. The case was transferred to this district on August 18, 2009.[1]

On November 5, 2009, Respondent filed an answer to the petition and Petitioner filed a traverse on December 11, 2009.

**DISCUSSION**

**I.      Jurisdiction**

A person in custody pursuant to the judgment of a state court may petition a district court for relief by way of a writ of habeas corpus if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. §§ 241(c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 375 n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. While Petitioner is currently incarcerated at Pelican Bay State Prison in Crescent City, California,[2] Petitioner's custody arose from a conviction in the Fresno County Superior Court. (Pet. at 2.) As Fresno County falls within this judicial district, 28 U.S.C. § 84(b), the Court has jurisdiction over Petitioner's application for writ of habeas corpus. *See* 28 U.S.C. § 2241(d) (vesting concurrent jurisdiction over application for writ of habeas corpus to the district court where the petitioner is currently in custody or the district court in which a state court convicted and sentenced the petitioner if the state "contains two or more Federal judicial districts").

\\\

---

[1] Respondent does not allege that the petition was untimely filed nor that the petition contains unexhausted claims.

[2] Crescent City falls within Del Norte County, which is within the jurisdiction of the Northern District of California. *See* 28 U.S.C. § 84(a).

## II. ADEPA Standard of Review

On April 24, 1996, Congress enacted the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for a writ of habeas corpus filed after the statute's enactment. *Lindh v. Murphy*, 521 U.S. 320, 326-327 (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir. 1997) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996), *overruled on other grounds by Lindh*, 521 U.S. 320 (holding AEDPA only applicable to cases filed after statute's enactment)). The instant petition was filed after the effective date of the AEDPA and is consequently governed by its provisions. *See Lockyer v. Andrade*, 538 U.S. 63, 70 (2003). Thus, the petition "may be granted only if [Petitioner] demonstrates that the state court decision denying relief was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Irons v. Carey*, 505 F.3d 846, 850 (9th Cir. 2007) (quoting 28 U.S.C. § 2254(d)(1))*, overruled in part on other grounds*, *Hayward v. Marshall*, 603 F.3d 546, 555 (9th Cir. 2010) (en banc); *see Lockyer*, 538 U.S. at 70-71.

Title 28 of the United States Code, section 2254 remains the exclusive vehicle for Petitioner's habeas petition as Petitioner is in custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment. *See Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1126-1127 (9th Cir. 2006) *overruled in part on other grounds*, *Hayward*, 603 F.3d at 555. As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" *Lockyer*, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id*. (quoting *Williams*, 592 U.S. at 412). "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Id*. Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." *Lockyer*, 538 U.S. at 72 (quoting 28 U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question

U.S. District Court
E. D. California

3

of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413; *see also Lockyer*, 538 U.S. at 72. "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the State court's application of clearly established federal law was "objectively unreasonable." *Id*. at 409.

Petitioner bears the burden of establishing that the state court's decision is contrary to or involved an unreasonable application of United States Supreme Court precedent. *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. *Clark v. Murphy*, 331 F.3d 1062, 1072 (9th Cir. 2003) ("While *only* the Supreme Court's precedents are binding on the Arizona court, and only those precedents need be reasonably applied, we may look for guidance to circuit precedents"); *Duhaime v. Ducharme*, 200 F.3d 597, 600-601 (9th Cir. 1999) (stating that while a federal habeas court "can no longer reverse a state court decision merely because that decision conflicts with Ninth Circuit precedent on a federal Constitutional issue....This does not mean that Ninth Circuit caselaw is never relevant to a habeas case after AEDPA. Our cases may be persuasive authority for purposes of determining whether a particular state court decision is an 'unreasonable application' of Supreme Court law, and also may help us determine what law is 'clearly established'"). Furthermore, the AEDPA requires that the Court give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). A federal habeas court is bound by a state's interpretation of its own laws. *Souch v. Schaivo*, 289 F.3d 616, 621 (9th Cir. 2002).

\\\

The initial step in applying AEDPA's standards is to "identify the state court decision that is appropriate for our review." *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005). Where more than one State court has adjudicated Petitioner's claims, a federal habeas court analyzes the last reasoned decision. *Id*. (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) for the presumption that later unexplained orders, upholding a judgment or rejecting the same claim, rests upon the same ground as the prior order). Thus, a federal habeas court looks through ambiguous or unexplained state court decisions to the last reasoned decision to determine whether that decision was contrary to or an unreasonable application of clearly established federal law. *Bailey v. Rae*, 339 F.3d 1107, 1112-1113 (9th Cir. 2003). Here, the California Court of Appeal and the California Supreme Court both adjudicated all Petitioner's claims. As the California Supreme Court summarily denied the petition for review, the Court looks through that decision to the last reasoned decision; namely, that of the California Court of Appeal. *See Ylst v. Nunnemaker*, 501 U.S. at 804.

**III.    Review of Petitioner's Claims**

The petition for writ of habeas corpus contains four rounds for relief. In his first ground for relief, Petitioner contends that the testimony of the gang expert violated his rights under the Confrontation Clause. The second ground for relief in the petition alleges that the admission of statements Petitioner made during booking violated his right against self-incrimination. In the third ground for relief, Petitioner contends that he was denied a fundamentally fair trial by the presence of spectators wearing buttons with the victim's picture. Petitioner's last ground for relief alleges that the trial court's refusal to admit exculpatory evidence, in the form of eyewitness statements, violated his constitutional right to present a defense and witnesses.

*A.    Ground One: Confrontation Clause*

Petitioner contends that his Confrontation Clause rights were violated by the trial court's admission of hearsay statements, as attested to by the gang expert, Detective Trenholm. Detective Trenholm testified that in his expert opinion Petitioner was a member of a criminal street gang, the West Fresno Norteños. (Rep. Tr. at 2001.) Detective Trenholm testified that this opinion was based on police reports (Rep. Tr. at 2001), jail classification documents (Rep. Tr. at 2001), Petitioner's own admissions (Rep. Tr. at 2002), Petitioner's tattoos (Rep. Tr. at 2002-2004), photographs of

Petitioner wearing gang colors and posturing with gang hang signs (Rep. Tr. at 2004-2006), Petitioner's admitted graffiti (Rep. Tr. at 2006), Petitioner's correspondence with other known gang members in custody (Rep. Tr. at 2006), and "identification by several other reliable source" (Rep. Tr. at 2006). Detective Trenholm further testified that in his expert opinion, the West Fresno Norteños is an active criminal street gang. (Id. at 1953-1954.) Detective Trenholm then testified to the admission by several individuals of their membership in the West Fresno Norteños and then testified to these individual's convictions. (Id. at 2604-2628.)

The Confrontation Clause protects a defendant from unreliable hearsay evidence being presented against him during trial. *See* U.S. Constitution, Amendment VI. The Confrontation Clause of the Sixth Amendment specifically provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." *Id.* The Sixth Amendment's Confrontation Clause was made applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Pointer v. Texas*, 380 U.S. 400, 403-05 (1965). In *Crawford v. Washington*, 541 U.S. 36, 59 (2004), the United States Supreme Court held that the Confrontation Clause bars the state from introducing out-of-court statements which are testimonial in nature, unless "the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." The *Crawford* court categorically rejected statements, which were otherwise deemed to be reliable, as exceptions to the Confrontation Clause, reasoning that "dispensing with confrontation because testimony is obviously reliable is akin to dispensing with a jury because a defendant is obviously guilty. This is not what the Sixth Amendment proscribes." *Id.* at 62.

Here, the Court finds that the State court's denial of Petitioner's Confrontation Clause claim was not an objectively unreasonable application of clearly established federal law. The California Court of Appeal, in analyzing Petitioner's Confrontation Clause claim, noted that:

> "The rule is long established in California that experts may testify as to their opinions on relevant matters and, if questioned, may relate the information and sources on which they relied in forming those opinions. Such sources may include hearsay." ( [*People v. Thomas*, 130 Cal.App.4th 1202, 1209 (2005)], citing *People v. Gardeley* (1996) 14 Cal.4th 605, 618-619; Evid.Code, § 801, subd. (b).) Consistently with the settled rule, Lopez questioned the gang expert, and the gang expert testified, about the hearsay information and sources he now challenges on appeal. Since a gang expert "is subject to cross-examination about his or her opinions" and "the materials on which the expert bases his or her opinion are not elicited for the truth of their

1  contents" but rather "are examined to assess the weight of the expert's opinion," no denial of Lopez's rights to confrontation and cross-examination occurred. ( *Thomas*, *supra*, at p. 1210.)

2  

3  As *Thomas* observes, *Crawford* states that the confrontation clause "'does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.'" ( *Thomas*, supra, 130 Cal.App.4th at p. 1210, quoting *Crawford*, *supra*, 541 U.S. at p. 59.) Lopez argues, however, that the prosecutor introduced the hearsay information and sources on which the gang expert relied to prove the truth of the gang expert's opinions. (*Cf.* [*Davis v. Washington*, 547 U.S. 813, 821-832 (2006)]; *Crawford*, *supra*, 541 U.S. at pp. 51-52; [*Tennessee v. Street*, 471 U.S. 409. 414 (1985)].) "But any expert's opinion is only as good as the truthfulness of the information on which it is based. Thus in *Thomas*, the expert's opinion that the defendant is a member of a gang has value only if the jury believes the hearsay on which the expert relied. Hearsay in support of expert opinion is simply not the sort of testimonial hearsay the use of which *Crawford* condemned." ( *Ramirez*, *supra*, 153 Cal.App .4th at p. 1427, citing *Thomas*, I, 130 Cal.App.4th at p. 1210 .)

10  (Lod. Doc. 2 at 4.)

11  Clearly established Supreme Court precedent in *Crawford* "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Crawford*, 541 U.S. at 59 n. 9 (citing *Tennessee v. Street*, 471 U.S. 409, 414 (1985)); *see Moses v. Payne*, 555 F.3d 742, 755 (9th Cir. 2009) (finding that \admission of out of court statement made by criminal defendant's son to a social worker did not violate Confrontation Clause as statement was admitted to explain why social worker called Child Protective Services).  Similar to the California rule discussed in the Court of Appeal's decision, the Federal Rules of Evidence permit an expert to rely on inadmissible hearsay evidence as long as the evidence is of the kind experts in the field regularly consult.  Fed. R. Evid. 703; *see United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000) (holding that police officer possessing years of experience and special knowledge of gangs may qualify as expert witnesses); *see also United States v. Steed*, 548 F.3d 961, 976 n. 13 (11th Cir. 2008) (noting that there exists no Supreme Court precedent pertaining to expert witness' reliance on otherwise inadmissible sources); *but cf. United States v. Mejia*, 545 F.3d 179, 197 (2nd Cir. 2008) (noting that police expert's testimony explaining inadmissible evidence he relied upon in reaching his conclusion may implicated the Confrontation Clause as the expert simply transmitted hearsay to the jury).  Here, the Court does not find that an objective application of *Crawford* would result in a finding that the gang expert's reliance on hearsay testimony to explain his opinion that Petitioner was a member of the West Fresno Norteños, and that the West Fresno Norteños are a criminal street

gang, to be in violation of Petitioner's Confrontation Clause rights. *See Walker v. Clark*, 2010 WL 1643580, at *15 n. 8 (C.D. Cal. Feb. 18, 2010) (listing district court cases finding that hearsay statements of gang members regarding their gang membership did not violate the Confrontation Clause as they were attested to by gang expert who was testifying about his expert opinion).

Furthermore, the Court finds that any such error would have been harmless. Even assuming that the admission of hearsay testimony was a violation of Petitioner's Confrontation Clause, the evidence did not have a substantial and injurious effect on the jury verdict as Petitioner's own statements evidence his membership in a gang. *See Winzer v. Hall*, 494 F.3d 1192, 1201 (9th Cir. 2007) (stating that violations of the Confrontation Clause does not require automatic reversal). Rather, the *Winzer* court found that such errors are trial errors, subject to harmless-error analysis. *Id*. The Ninth Circuit explained that an error is harmless unless it results in actual prejudice, which is demonstrated where "the error in question had a 'substantial and injurious effect or influence in determining the jury's verdict.'" *Id*. (quoting *Brecht v. Abramson*, 507 U.S. 619, 623 (1993). As attested to by Detective Trenholm, Petitioner admitted on five separate occasions that he was a member of the West Fresno Norteños. (Rep. Tr. at 2002.) Petitioner's own statements are neither hearsay nor do they implicate Petitioner's rights under the Confrontation Clause. *See Vasquez v. Kirkland*, 572 F.3d 1029, 1037 (9th Cir. 2009) (noting that cases challenging "the use of a defendant's own statements against him ... implicate a defendant's Fifth Amendment rights rather than the Sixth Amendment right of confrontation"); *Laney v. Felker*, 2010 WL 1610128, * 7 (C.D. Cal. April 19, 2010) (listing cases); *see also United States v. Nicholas*, 594 F. Supp. 2d 1116, 1126 (C.D. Cal. Dec. 29, 2008). Additionally, the Court notes that there was plentiful evidence outside of the hearsay statement of Petitioner's gang membership, including Petitioner's tattoos, a photograph of Petitioner wearing gang colors while posturing with gang hand signs and in the presence of other gang members, Petitioner's' admission that regarding the graffiti, and Petitioner's correspondence with other known gang members in custody. (Id. at 2002-2006).

\\\

\\\

\\\

Additionally, the trial court instructed the jury that the evidence regarding gang membership was for a limited purpose and could not be used to convict Petitioner of the substantive offenses. (Rep. Tr. at 2622). "We must presume that the jury followed those instructions." *United States v. Awad*, 551 F.3d 930, 940 (9th Cir. 2009); *see Greer v. Miller*, 483 U.S. 756, 766 n.8 (1987) (plurality opinion); *see also Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (finding that, "[t]he rule that juries are presumed to follow their instructions is a pragmatic one, rooted less in the absolute certitude that the presumption is true than in the belief that it represents a reasonable practical accommodation of the interests of the state and the defendant in the criminal justice process"). Thus, the hearsay statements attested to by Detective Trenholm regarding Petitioner's gang membership did not have a substantial and injurious effect on the jury's verdict regarding the substantive offenses. Consequently, even assuming that there was a Confrontation Clause error, Petitioner is not entitled to habeas corpus relief on this ground.

### B.     Ground Two: Miranda Error

In his second ground for relief, Petitioner contends that his Fifth Amendment privilege against self-incrimination, pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), was violated by the gang expert's reliance on his statement during booking. In *Miranda*, the Supreme Court held the admission of statements resulting from a custodial interrogation violated a criminal defendant's Fifth Amendment privilege against self-incrimination where the statements were not preceded by appropriate warnings. *Id*. at 444. Here, the California Court of Appeal found that the trial court's admission of Petitioner's booking statement was a constitutional violation pursuant to *Miranda*. (Lod. Doc. 2 at 6-7.) However, the appellate court concluded that under the standard set forth in *Chapman v. California*, 386 U.S. 18 (1967), the *Miranda* error was harmless beyond a reasonable doubt. (Lod. Doc. 2 at 7.)

Assuming *arguendo* that the State court correctly found that Petitioner's *Miranda* rights were violated by the trial court's admission of his statements during booking, the Court must still analyze whether the error was harmless. Generally, where the state court applied the appropriate standard of review in disposing of a constitutional error as harmless, the dispositive inquiry before a federal habeas court is whether the state court's harmless error analysis was objectively unreasonable. *See*

*Medina v. Hornung*, 386 F.3d 872, 878 (9th Cir. 2004); *Inthavong v. Lamarque*, 420 F.3d 1055, 1058-1059 (9th Cir. 2005) (citing *Mitchell v. Esparza*, 540 U.S. 12, 17-18 (2003) (per curiam) and *Medina*, 386 F.3d at 878-879, for proposition that State appellate court's finding that admission of defendant's statement was harmless is entitled to deference unless it conflicts with the Supreme Court's reasoning or holdings or if the State court's application of the harmless error standard was objectively unreasonable).  Here, the State appellate court applied the incorrect, albeit more stringent, standard of review by analyzing whether the *Miranda* error was harmless beyond a reasonable doubt under *Chapman*.  The United States Supreme Court in *Fry v. Pliller*, 551 U.S. 112, 120 (2007) confronted the question of whether *Brecht* or *Chapman* provides the appropriate standard for a federal habeas court to review a constitutional error.  The *Fry* court held that:

> [I]n § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the "substantial and injurious effect" standard set forth in *Brecht*, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353, whether or not the state appellate court recognized the error and reviewed it for harmlessness under the "harmless beyond a reasonable doubt" standard set forth in *Chapman*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705.

*Id*. at 121-22; *see also Arizona v. Fulimante*, 409 U.S. 279, 306-312 (1991) (holding that violation of *Miranda* does not require automatic reversal); *Arnold v. Runnels*, 421 F.3d 859, 867-68 (9th Cir. 2005) (applying *Brecht* harmless error standard to statement taken in violation of *Miranda* ).  In *Moses*, 555 F.3d at 755, the Ninth Circuit went on to apply the *Brecht* standard rather than analyzing whether the state court's decision applying *Chapman* was objectively unreasonable.  Thus, the dispositive inquiry before this Court is whether the constitutional error here rises to the level of a *Brecht* error.

The Court notes that the *Brecht* standard merely requires the court to determine whether the error had a 'substantial and injurious effect or influence in determining the jury's verdict." *Fry*, 551 U.S. at 121-22.  Thus, *Brecht* is a more forgiving standard for state court errors than *Chapman*.  *See Larson v. Palmaeteer*, 515 F.3d 1057, 1064 (9th Cir. 2008) ("Review for harmless error under *Brecht* is 'more forgiving' to state court errors than the harmless error standard the Supreme Court applies on its direct review of state court convictions"); *see also Fry*, 551 U.S. at 116 (noting that *Brecht* is a "more forgiving standard of review" when contrasting *Brecht* with *Chapman*'s standard).

While the California Court of Appeal's analysis was undertaken pursuant to *Chapman*, the Court finds the appellate court reasoning also applicable to analyzing whether the error was harmless under *Brecht*. As noted by the California Court of Appeal:

> [T]he record is replete with other evidence of his gang membership-(1) his admissions of gang membership on other occasions; (2) his admission of the placement of his gang moniker and gang graffiti on a wall; (3) gang tattoos on his body such as "1" and "4" for the 14th letter of the alphabet (the "N" in Norteño), "W" and "S" for "WS" ("Westside"), and "WSN" for West Fresno Norteño; (4) a photograph of him socializing with gang members and making a "W" ("Westside") gang sign with his hand; and (5) his correspondence with other gang members while in custody. On that record, the court's error in admitting his answers to inquiries by jailers about his gang membership was harmless beyond a reasonable doubt.

(Lod. Doc. 2 at 7.)

The evidence outlined by the State court in its analysis of why the *Miranda* error is harmless under *Chapman* is also fatal to Petitioner's claim under *Brecht*. As noted in preceding section discussing Petitioner's Confrontation Clause claim, the trial record contains abundant evidence of Petitioner's gang affiliation. Thus, the Court finds that the trial court's admission of Petitioner's statements during booking did not have a substantial and injurious effect on influencing the jury's verdict in that regard. Therefore, the Court finds that Petitioner is not entitled to habeas corpus relief on this ground.

### C.   Ground Three: Denial of Fundamentally Fair Trial

Petitioner contends that he was denied his right to a fair trial under the Due Process Clause when the trial court permitted spectators at the trial, presumably family members of the victim, to wear buttons bearing the victim's picture during the trial. Petitioner had unsuccessfully moved the trial court to order the spectators to refrain from wearing the buttons. On appeal, the California Court of Appeal held that there was no inherent prejudice that resulted from the spectator's conduct, especially in light of the strong evidence of Petitioner's guilt. (Lod. Doc. 2 at 8-10.)

This ground for relief cannot serve as a basis for habeas corpus relief made explicitly clear in the United State Supreme Court's holding in *Carey v. Musladin*, 549 U.S. 70 (2006). The *Carey* court was confronted with the exact same factual scenario as the one alleged currently alleged by Petitioner. In *Carey*, the habeas petitioner alleged that members of the victim's family wore buttons with the victim's picture on the button while seated in the courtroom his murder trial. The Supreme

Court found that habeas corpus relief was not available as "[i]n contrast to state-sponsored courtroom practices, the effect on a defendant's fair-trial rights of the spectator conduct to which Musladin objects is an open question in our jurisprudence." *Id.* at 76. The *Carey* Court concluded that as there were no Supreme Court precedent "regarding the potentially prejudicial effect of spectators' courtroom conduct of the kind involved here, it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Id.* at 77 (citing 28 U.S.C. § 2254(d)(1)). For this same reason, the Court finds that Petitioner has failed to establish that he is entitled to habeas corpus relief on this ground.

### *D.     Ground Four: Exclusion of Exculpatory Statements*

Petitioner contends that his right to due process of the law, protected by the Fourteenth Amendment in state prosecutions, was violated by the trial court's refusal to admit the statements of six eyewitnesses. (Pet. at 6.) The statements in question were given to various police officers on the night of the shooting. (Lod. Doc. 1, Appellant Opening Br., at 95-98.)

"[T]he [United States] Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (citations omitted). "The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations." *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973); *accord Davis v. Alaska*, 415 U.S. 308, 317 (1974); *Washington v. Texas*, 388 U.S. 14, 19 (1967). The erroneous exclusion of critical, corroborative defense evidence may violate both the Fifth Amendment due process right to a fair trial and the Sixth Amendment right to present a defense. *DePetris v. Kyukendall*, 239 F.3d 1057, 1062 (9th Cir. 2001)(citing *Chambers*, 410 U.S. at 294 and *Washington*, 388 U.S. at 18-19 in holding that exclusion of victim's journal was prejudicial error under the *Brecht* standard). The exclusion of exculpatory evidence rises to the level of a constitutional violation only if the exclusion "infringed upon a weighty interest of the accused" or "significantly undermined fundamental elements of the defendant's defense." *United States v. Scheffer*, 523 U.S. 303, 308, 315 (1998). However, as cautioned by the United States Supreme Court in *Scheffer*, "[a] defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions." *Id.*; *see also Moses*, 555 F.3d at 757 (noting that right of a criminal

defendant to present relevant evidence is subject to reasonable restrictions, such as evidentiary and procedural rules).

In adjudicating this claim, the California Court of Appeal recognized that a criminal defendant has the constitutional right to present witness in his own defense. (Lod. Doc. 2 at 12.) However, the State appellate court concluded that the restriction imposed here by the trial court, pursuant to California Evidence Code section 1240, was a reasonable restriction. The Court of Appeal stated:

> [S]ince the "right to present relevant evidence is not unlimited, but rather is subject to *reasonable* restrictions," the accused's "interest in presenting such evidence may thus 'bow to accommodate other legitimate interests in the criminal trial process' " like the "broad latitude" lawmakers have to "establish rules excluding evidence from criminal trials." ( *United States v. Scheffer* (1998) 523 U.S. 303, 308, italics added.) Rules so established "do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" ( *Ibid*.) Evidence Code section 1240 "is the codification of an established common law exception to the hearsay rule." ([*People v. Poggi*, 45 Cal.3d 306, 318 (1988)] Without a showing that the statements at issue met the statute's reasonable requirements of spontaneity and stress of excitement, Lopez fails to establish that the court's ruling violated his rights to confrontation and due process.

(Lod. Doc. 2 at 12-13.)

Clearly established Supreme Court precedent makes clear that there exists no absolute entitlement to introduce crucial, relevant evidence. *See Montana v. Egelhoff,* 518 U.S. 37, 53 (1996) (quoting *Crane v. Kentucky*, 476 U.S. at 690("*In the absence of any valid state justification*, exclusion of this kind of exculpatory evidence deprives a defendant of the basic right to have the prosecutor's case encounter and survive the crucible of meaningful adversarial testing")(emphasis added)).  Here, Petitioner has failed to establish that the requirement imposed here, specifically that hearsay statements are admissible where the statement was "made spontaneously while the declarant was under the stress of excitement caused by such perception," is an unreasonable restriction without valid state justification. Cal. Evid. Code § 1240(b)).  Rather, Petitioner's argument seems to be that the State court erroneously applied the California Evidence Code as Petitioner argues the statement were spontaneous.  The Court does not find this to be the case as the State court noted that there was no abuse of discretion since Petitioner failed to establish the spontaneity and stress of excitement required to admit the statements. (Lod. Doc. 2 at 12.)  Furthermore, the Court notes that Petitioner

has not alleged that the trial court imposed any restrictions on his ability to actually call those six eyewitnesses to testify in his trial. Thus, the Court finds Petitioner is not entitled to habeas corpus relief on this ground.

## RECOMMENDATION

Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for Respondent.

This Findings and Recommendation is submitted to the Honorable Anthony W. Ishii, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within ten (10) *court* days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   July 1, 2010**                          /s/ John M. Dixon
                                                           UNITED STATES MAGISTRATE JUDGE